## CONRAD JENSEN *vs.* CITY OF WALTHAM.

Middlesex.    March 16, 1896. — June 15, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Superintendent of Streets as Public Officer — Liability of City.*

A city is not liable for the negligence of a laborer employed by its superintendent of streets in the construction of a new street which has been laid out by the board of aldermen, and which they have directed the superintendent to build, if, under the charter of the city, the superintendent was acting as a public officer in employing the laborer and in constructing the street.

TORT, for personal injuries occasioned to the plaintiff by the negligence of one Alexander McGilvrey. At the trial in the Superior Court, before *Blodgett,* J., the only question was whether McGilvrey was acting as a servant of the defendant for whose negligence the defendant was liable. At the close of the evidence, the judge, at the defendant's request, directed a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*G. L. Mayberry,* (*T. F. Gary* with him,) for the plaintiff.

*C. A. Williams,* for the defendant.

MORTON, J.   In *McCann* v. *Waltham,* 163 Mass. 344, the negligence charged was that of the assistant superintendent of streets, while engaged in repairing a street that had been laid out previously.   In this case it is the negligence of a laborer employed by the superintendent in the construction of a new street which had been laid out by the board of aldermen, and which they had directed the superintendent to build.   It was held in McCann's case that the assistant superintendent was a public officer.

The question here is whether the superintendent ceased to act as a public officer because he was engaged in building a new street instead of repairing an old one.

By the charter, the administration of all the fiscal, prudential, and municipal affairs of the city, with the government thereof, is vested in the mayor and one council of twenty-one members, called the board of aldermen.   St. 1884, c. 309, § 2.   The board of aldermen has power, amongst other things, " to lay out, alter, discontinue, locate anew, fix the grade of, or order specific repairs in, any highway, street, or town way, and to estimate and assess the damages any person may sustain thereby ; . . . to act upon all matters in which authority is given by general laws relating to streets, sidewalks, drains and sewers, and the taking of land from which may be taken earth and gravel ; and generally shall have and exercise all the powers of towns and all the powers of city councils and board of aldermen under general laws, and may by ordinance prescribe the manner in which said powers shall be exercised."   § 15.   It is also provided by the charter that the board of aldermen shall elect a board of street commissioners, which shall organize annually by the choice of a chairman and clerk, and which shall appoint also annually a superintendent.   § 23.   Provision is also made for other administrative boards.   The chairmen of the boards of street commissioners, of the overseers of the poor, and of the water commissioners, and a member of the school committee appointed for that purpose, are entitled to seats with the board of aldermen, and have the right to discuss matters relating to their respective departments, but cannot vote.   § 31.

So far as the organization thus provided for relates to streets, it is obvious that it is established for the purpose of enabling

the defendant to perform more efficiently the duties imposed upon it by general laws respecting their construction, maintenance, and repair. The street commissioners and superintendent are charter officers. They are not elected or appointed at the will or pleasure of the board of aldermen. The charter requires the board to elect the commissioners, and they in turn are obliged to appoint the superintendent. Manifestly, the duties of the commissioners and superintendent must relate to the streets, and, mainly, be of a public nature. They are the recognized and approved channel through which the board of aldermen is expected to perform the duties imposed upon it by law in regard to the construction, maintenance, and repair of streets. As pointed out in *McCann* v. *Waltham, ubi supra,* the board has only a qualified control over them. The fact that the ordinances may relate more especially to matters of repair and maintenance than of construction, does not limit the scope of the charter, or take away the power of the board of aldermen to direct the commissioners and superintendent by vote in relation to the construction of a new street. The board of aldermen may prescribe duties for and direct the commissioners and superintendent by vote as well as by ordinance. St. 1884, c. 309, § 15. We think, therefore, that the superintendent was acting as a public officer in employing McGilvrey, and that the case is distinguishable for that reason from *Deane* v. *Randolph,* 132 Mass. 475 ; *Waldron* v. *Haverhill,* 143 Mass. 582 ; and *Pratt* v. *Weymouth,* 147 Mass. 245. There is nothing in *McManus* v. *Weston,* 164 Mass. 263, inconsistent with the result we have reached.

It is unnecessary to consider whether McGilvrey was an independent contractor.

*Exceptions overruled.*