MARY TAGGART, administratrix, *vs.* CITY OF FALL RIVER.

Bristol.    January 14, 1898. — February 25, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Employers' Liability Act — Liability of Municipal Corporation.*

Where, in an action for injuries occasioned to the plaintiff's intestate while employed under the direction of the superintendent of streets and surveyor of highways of the defendant city in the construction of a street through a large tract of unimproved land owned by the defendant, there is no reason for holding the defendant responsible on the ground that it had taken the work out of the hands of the superintendent and surveyor upon whom the duty of performing it was cast by law, or on the ground that the city would derive an incidental advantage or profit from an increase in the value of its land, the case falls within the general rule, that cities and towns are not liable to private actions for omissions or neglect unless they are given by statute.

TORT, for personal injuries occasioned to the plaintiff while in the defendant's employ. The first count was at common law, and the last two under the employers' liability act, St. 1887,

c. 270. Trial in the Superior Court, before *Lilley*, J., who, at the close of the evidence, directed a verdict for the defendant; and the plaintiff alleged exceptions.

*J. M. Morton, Jr.*, for the plaintiff.

*L. E. Wood*, for the defendant.

ALLEN, J. The general rule is, that cities and towns are not liable to private actions for omissions or neglect in the performance of corporate duties imposed upon them by law, unless such action is given by statute. *Pettingell* v. *Chelsea*, 161 Mass. 368. There are some exceptions to this rule, and the one now chiefly relied on by the plaintiff is, that a city or town is sometimes held liable to a private action when it derives a profit or advantage from the performance of the duty. The question before us is whether the present case falls within the general rule or the exception.

It appeared that the city owned a large tract of unimproved land, and that the mayor and aldermen duly laid out Hood Street as a public street or way. The city's land had been laid out into lots, and part had been sold, and other lots were advertised for sale by auction, and the advertisements stated that the work on Hood Street would be continued to completion. It may be assumed that the completion of the street would increase the value of the land of the city, as well as of other owners in that vicinity. The plaintiff's intestate was one of a gang of laborers, who, under the direction of the superintendent of streets and surveyor of highways of the defendant, were engaged in cutting Hood Street through a bank of earth six or eight feet high, and he was caught by falling dirt. The plaintiff offered proof of negligence on the part of the defendant. By a city ordinance there was a superintendent of streets, who was to act under the direction and control of the surveyor of highways. An order had been passed by the city government directing the superintendent of streets to work Hood Street to grade. There was nothing further to show any interference by the city, by agents of its own, with the work of building the street. The work was done by the superintendent of streets and surveyor of highways, the same person filling both of these positions. According to all the cases, there is no reason for holding the city responsible on the ground that it had taken the work out of the hands of the

officer upon whom the duty of performing it was cast by law. *Jensen* v. *Waltham,* 166 Mass. 344. *McManus* v. *Weston,* 164 Mass. 263. *McCann* v. *Waltham,* 163 Mass. 344. *Hennessey* v. *New Bedford,* 153 Mass. 260.

Nor does the fact that the city would derive an incidental advantage or profit from an increase in the value of its land bring the case within an exception to the general rule. It does not appear when or how or for what purpose the city became the owner of the land which it had for sale. A witness spoke of it as a part of the city farm. We need not consider what would be the rule if the city had bought the land for the purpose of profit by laying out streets and cutting it up into lots for sale. Nothing of the kind appears. The street had been duly laid out; and there must have been an adjudication that it was required by public convenience and necessity. The work upon it was therefore work for the public benefit. The increase of the value of the land in the neighborhood, in which benefit the city shared with other owners, does not change the character of the work or impose liability on the city, as showing that it was a work carried on as a business for profit. *Curran* v. *Boston,* 151 Mass. 505. *McCann* v. *Waltham,* 163 Mass. 344. The case is to be distinguished from *Neff* v. *Wellesley,* 148 Mass. 487, where the same persons were overseers of the poor, surveyors of highways, and selectmen, and carried on the town farm, receiving paupers from another town to board there for pay, and also boarding persons employed upon the highways. Those officers were held to be acting as agents of the town, for the profit of the town. The exception to the general rule cannot be extended so far as to include a case like the present.

*Exceptions overruled.*