MARY A. BOLSTER, administratrix, *vs.* CITY OF LAWRENCE.

Essex. November 8, 1916. — January 3, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Municipal Corporations*, Liability for torts, Public bathhouse. *Negligence*, Of municipality, Causing death.

Review by RUGG, C. J., of the decisions of this court relating to and a statement of the principles of law governing liability of municipalities for tortious acts of themselves and their officers and agents.

A municipal corporation which, under the authority conferred by R. L. c. 25, §§ 20, 21, maintains a public bathhouse and its approaches and makes no charge for their use, is not liable for conscious suffering and death resulting to one properly using the facilities offered from the giving way of the structure and its approaches by reason of the negligence of such municipal corporation or of its servants.

The fact that, under the power conferred by the statute, the municipality might charge for the use of the bathhouse and thus might derive revenue or profit

from the undertaking, does not under the circumstances above described make liable a municipality which makes no such charge.

TORT by the administratrix of the estate of William P. Bolster for the conscious suffering and death of the plaintiff's intestate alleged to have been caused by the giving way of a public bathhouse and its approaches maintained by the defendant under authority conferred by R. L. c. 25, §§ 20, 21. Writ dated June 17, 1914.

The defendant demurred. The demurrer was heard and sustained by *Dana*, J., by whose order judgment was entered for the defendant. The plaintiff appealed.

In five other actions against the same defendant, in which the pleadings were similar to the pleadings in this action, it was stipulated by the parties that the decision of this court upon the demurrer in this action should be applicable to and binding upon them.

*H. J. Cole*, (*W. F. Barrett* with him,) for the plaintiff.

*D. J. Murphy*, for the defendant.

RUGG, C. J. The allegations in the several counts of the plaintiff's declaration, so far as now material, are in substance that the defendant city maintained and operated a bathhouse established by it on the shore of the Merrimac River, whereby the plaintiff's intestate, who had resorted to the bathhouse for the enjoyment of the facilities there afforded, while in the exercise of due care, was mortally injured by the giving way of the structure and its approaches, resulting from the negligence of the defendant and its servants. The bathhouse was maintained under R. L. c. 25, §§ 20 and 21. Thereby the defendant was authorized to purchase or lease land and erect or repair a building "for public baths" and to "make open bathing places" and to "provide instruction in swimming" and also to "establish rates for the use of such baths." There is no averment that the defendant made any charge for the use of the bathhouse. The argument before us proceeded upon the assumption that no charge was made, and that the bathhouse was established and maintained for the free use of the public. The case must be considered on that footing.

The general principles of law by which claims for liability in tort against cities and towns must be determined are well estab-

lished. The municipality, in the absence of special statute imposing liability, is not liable for the tortious acts of its officers and servants in connection with the gratuitous performance of strictly public functions, imposed by mandate of the Legislature or undertaken voluntarily by its permission, from which is derived no special corporate advantage, no pecuniary profit, and no enforced contribution from individuals particularly benefited by way of compensation for use or assessment for betterments. A city or town is not liable, therefore, for negligent or tortious acts in the conduct of schools, *Hill* v. *Boston*, 122 Mass. 344, the construction of schoolhouses, *Howard* v. *Worcester*, 153 Mass. 426, the maintenance of a city hall solely for public uses, *Kelley* v. *Boston*, 186 Mass. 165, of shade trees, *Donohue* v. *Newburyport*, 211 Mass. 561, of a house of industry, *Curran* v. *Boston*, 151 Mass. 505, of a public park, *Holleran* v. *Boston*, 176 Mass. 75, in the printing of committee reports, *Howland* v. *Maynard*, 159 Mass. 434; nor is it answerable for the acts of police officers, *Buttrick* v. *Lowell*, 1 Allen, 172, highway surveyors, *Dupuis* v. *Fall River*, 223 Mass. 73, *Smith* v. *Gloucester*, 201 Mass. 329, road commissioners, *McManus* v. *Weston*, 164 Mass. 263, members of the fire department, *Hafford* v. *New Bedford*, 16 Gray, 297, *Pettingell* v. *Chelsea*, 161 Mass. 368, *Workman* v. *New York*, 179 U. S. 552, 580, assessors, *Rossire* v. *Boston*, 4 Allen, 57, *Hathaway* v. *Everett*, 205 Mass. 246, selectmen, *Cushing* v. *Bedford*, 125 Mass. 526, *Pinkerton* v. *Randolph*, 200 Mass. 24, boards of aldermen, *Child* v. *Boston*, 4 Allen, 41, 51, the city government, *Griggs* v. *Foote*, 4 Allen, 195, licensing boards, *McGinnis* v. *Medway*, 176 Mass. 67, tax collectors, *Alger* v. *Easton*, 119 Mass. 77, constable and deputy collector of taxes, *Dunbar* v. *Boston*, 112 Mass. 75, overseers of the poor, *New Bedford* v. *Taunton*, 9 Allen, 207, servants in the discharge of fireworks, *Tindley* v. *Salem*, 137 Mass. 171, those in charge of celebrations, playgrounds and public amusements, *Kerr* v. *Brookline*, 208 Mass. 190, *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583, 588, boards of health, *Barry* v. *Smith*, 191 Mass. 78, 88, 91, other health officers, *Harrington* v. *Worcester*, 186 Mass. 594, 598, collectors of refuse, *Johnson* v. *Somerville*, 195 Mass. 370, gatemen or drawtenders, *Butterfield* v. *Boston*, 148 Mass. 544, *Hawes* v. *Milton*, 213 Mass. 446, transit and subway commissioners, *Mahoney* v. *Boston*, 171 Mass.

427, and officers charged with enforcement of statutes as to the removal of wires and electric appliances from streets, *Postal Telegraph-Cable Co.* v. *Worcester,* 202 Mass. 320.

On the other hand a municipality is answerable for the acts of its servants or agents in the conduct of functions voluntarily undertaken for its own profit and commercial in character, or to protect its corporate interests in its own way. Thus it is liable for the acts of agents specially selected and deputed to repair highways to the exclusion of those public officers provided by the law, on the ground that it is protecting by *quasi* private instrumentalities its pecuniary interest growing out of statutory liability for defects in highways. *Butman* v. *Newton,* 179 Mass. 1. *Waldron* v. *Haverhill,* 143 Mass. 582. It is liable, on the same ground, for agencies used in lighting streets. *Dickinson* v. *Boston,* 188 Mass. 595. *Sullivan* v. *Holyoke,* 135 Mass. 273. So, also, it is liable for negligence in the management of its water department, *Hand* v. *Brookline,* 126 Mass. 324, *Lynch* v. *Springfield,* 174 Mass. 430, *Johnson* v. *Worcester,* 172 Mass. 122, in the operation of its sewer system, *O'Brien* v. *Worcester,* 172 Mass. 348, *Allen* v. *Boston,* 159 Mass. 324, in running a ferryboat, *Davies* v. *Boston,* 190 Mass. 194, in the letting of a public hall for profit, *Little* v. *Holyoke,* 177 Mass. 114, *Oliver* v. *Worcester,* 102 Mass. 489, 499, in managing a farm, partly for the support of its poor, partly for the maintenance of its highway department, and partly for the production of income, *Neff* v. *Wellesley,* 148 Mass. 487, in the operation of a stone crusher for profit, *Duggan* v. *Peabody,* 187 Mass, 349, *Collins* v. *Greenfield,* 172 Mass. 78, and in the maintenance of electric and gas lighting plants for the use of which rates are charged, *O'Donnell* v. *North Attleborough,* 212 Mass. 243.

The difficulty lies not in the statement of the governing principles of law, but in their application to particular facts. The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence. *Tindley* v. *Salem,* 137 Mass. 171.

The maintenance of free public baths upon the bank of a river

is in its essence a public benefit. It is manifestly in the interests of the public health that the people have abundant facilities for cleanliness. Opportunity for swimming under sanitary conditions and under the protection and with the instruction of public officers tends toward the amusement of the people as well as their healthful and athletic exercise. It belongs to the same class of public service as municipal playgrounds and swimming pools for small children. It is a kind of social advantage which the Commonwealth long has provided at Nantasket and Revere beaches on a considerable scale. It is in its intrinsic characteristics a project for the general good of all the public.

The only doubtful aspect of the case arises from the circumstance that the statute empowers the cities and towns, which vote to adopt its provisions, "to establish rates for the use of such baths," and thus possibly to derive a revenue or profit from the undertaking. But, as has been pointed out, there is no allegation that there has been any rate charged in the case at bar. The simple possibility that a charge might have been made is not enough to transform that which in its main features as actually conducted is a purely public duty rendered for the common good into a *quasi* commercial adventure.

In this respect the case is indistinguishable in principle from city hospitals maintained, not infrequently under special statute, for the performance of a duty assumed for the benefit of the public. Although such institutions may receive pay patients, their public character is not lost thereby and no liability attaches to the municipality arising from negligence of those in charge. *Benton* v. *Boston City Hospital,* 140 Mass. 13. The case at bar is somewhat similar to that where a city has been exonerated from responsibility for negligence in the care of its city hall, although housed in it rent free were the commercial, revenue yielding departments of water, sewer and ferries. *Kelley* v. *Boston,* 186 Mass. 165. It is not unlike the cases where a slight revenue is obtained from the labor performed at a public workhouse, *Curran* v. *Boston,* 151 Mass. 505, a charge sufficient to cover the bare cost of removal of steam engine ashes is collected in connection with the gratuitous removal of all ashes from dwelling houses, *Haley* v. *Boston,* 191 Mass. 291, or a rental is received for the use of the tunnel and subways in Boston, *Mahoney* v.

*Boston,* 171 Mass. 427, in each of which it has been held that the comparatively insignificant element of income received did not affect the dominating public character of the enterprise, and did not render the city liable for the torts of public officers and servants in performing such public duty.

A similar conclusion was reached as to liability for negligence in the operation of a bathhouse maintained by public authority; in *McGraw* v. *District of Columbia,* 3 App. Cas. (D. C.) 405, although it does not appear directly in that case that there was authority to make any charge.

It follows that for the acts set forth in the plaintiff's declaration the defendant is not liable on the broad ground recognized in most jurisdictions, that in the establishment and maintenance of purely public instrumentalities devoted to the common good, as is a bathhouse under the circumstances here disclosed, it acted as an agency of government in the performance of duties assumed solely for the benefit of the public. See *Donohue* v. *Newburyport,* 211 Mass. 561, 565.

The demurrer to the plaintiff's declaration was sustained rightly and judgment in favor of the defendant is

*Affirmed.*